**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

RUEL SALVA MERCADO,                    )
                                       )
                Petitioner,            )          3:02-cv-0357-ECR-RAM
                                       )
vs.                                    )
                                       )          ORDER
JACKIE CRAWFORD, *et al.*,             )
                                       )
                Respondents.           )
_____)

        This action proceeds on a petition for writ of habeas corpus pursuant to 28 U.S.C. §
2254, by petitioner Ruel Salva Mercado, a Nevada prisoner.  Before the court is respondents' answer
(docket #48) and petitioner's reply (docket #57).

**I.     Background**

                Petitioner was charged with murder which resulted from a botched attempt to rob the
Renata Bar  in Henderson, Nevada.  Petitioner and three other individuals, all members of the Pinoy
or Flipside gangs, planned and attempted to rob the casino cage during the early morning hours of
November 25, 1994.  During the attempted robbery, one robber shot and injured the bartender and
another shot and killed another employee.  All were ultimately arrested and charged with first degree
murder with the use of a deadly weapon and numerous other charges related to the robbery which
included potential deadly weapon and gang enhancements.  The prosecution filed its notice of intent
to seek the death penalty.  Ultimately all but petitioner entered guilty pleas to murder.  At least one
agreement required that defendant's testimony against petitioner at trial.  Petitioner stood trial facing

1  the death penalty.  One of the co-defendants, Felix Austria, testified against him.  Another witness,

2  Carl Flores, was a paid FBI informant and member of the Flipside gang.   Petitioner was represented

3  by two experienced defense attorneys appointed for him by the court.

4  **II.    Procedural History**

5             Petitioner and three co-defendants were charged with twenty-two counts: count I,

6  murder with the use of a deadly weapon; count II, attempted murder with the use of a deadly

7  weapon; count III, burglary while in possession of a deadly weapon with the intent to promote,

8  further, or assist a criminal gang; counts IV, V, and VI, attempted robbery with the use of a deadly

9  weapon with the intent to promote, further, or assist a criminal gang; counts VII, first degree

10  kidnapping with the use of a deadly weapon with intent to promote, further, or assist a criminal gang;

11  counts VII-XXII, coercion with the use of a deadly weapon with the intent to promote, further, or

12  assist a criminal gang; and count XXI, possession of a stolen vehicle with the intent to promote,

13  further, or assist a criminal gang.  Exhibit 22.[1]  The state filed notice of its intent to seek the death

14  penalty in petitioner's case.  Exhibit 24.

15             A preliminary hearing was held between January 4, 1995 and January 19, 1995.

16  Exhibits 10, 14-17 and 19.  The state amended the charges against the petitioner, and petitioner was

17  charged, by way of information, with one count of murder with the use of a deadly weapon, one

18  count of attempted murder with a deadly weapon, one count of burglary while in possession of a

19  deadly weapon with the intent to promote, further, or assist a criminal gang, three counts of

20  attempted robbery with the use of a deadly weapon with the intent to promote, further, or assist a

21  criminal gang, two counts of first degree kidnapping with a deadly weapon with the intent to

22  promote, further, or assist a criminal gang, and fourteen counts of coercion with the use of a deadly

23  weapon with the intent to promote, further, or assist a criminal gang.  Exhibit 80.  After a jury trial,

24  petitioner was convicted as charged of counts I-VII, IX, and XI-XX.  Exhibit 91.

25

26        [1]  The exhibits cited in this order in the form "Exhibit ___," are those filed by petitioner in support of his original petition for writ of habeas corpus and the amended petition, and are located in the record at docket #13-19 and #38.

2

1    The trial court sentenced petitioner as follows: count I, to life imprisonment without

2  the possibility of parole, with an equal and consecutive sentence for the use of a deadly weapon;

3  count II, to twenty years in prison with a consecutive twenty year sentence for the deadly weapon;

4  count III, to ten years in prison with an equal and consecutive sentence for the use of a deadly

5  weapon; counts IV, V and VI, to seven and one half years with an equal and consecutive sentence;

6  counts VII and IX, to life in prison with the possibility of parole with an equal and consecutive

7  sentence for the use of a deadly weapon; counts XI-XX, to six years in prison plus an equal and

8  consecutive sentence for the use of a deadly weapon.  Exhibit 110.  Count IV is to run consecutively

9  to count II, count V is to run consecutively to count IV, and count VI is to run consecutively to count

10  V.  *Id.*  A judgment of conviction was entered on December 19, 1995.  *Id.*

11    Petitioner appealed, arguing (1) the trial court erred in denying a motion for mistrial,

12  as the state failed to disclose impeachment evidence on a testifying co-defendant until after trial, (2)

13  he was denied a fair trial due to the state's use of printouts that contained criminal records on

14  prospective jurors during voir dire, (3) the trial court erred in allowing a letter allegedly written by

15  the petitioner into evidence, (4) the penalty hearing was fundamentally unfair because the trial court

16  allowed into evidence a videotape of the victim with his family, and (5) the petitioner is entitled to a

17  new penalty hearing since there was insufficient evidence that the murder was committed to avoid a

18  lawful arrest.  Exhibit 115.   The Nevada Supreme Court dismissed the appeal.  Exhibit 125.

19  Remittitur issued on May 6, 1998.  Exhibit 126.

20    Petitioner filed a state habeas corpus petition on March 25, 1999.  Exhibit 127.  The

21  petition alleged thirty-four grounds for relief.  *Id.*  The state district court denied the petition.  Exhibit

22  130.  The court found grounds one, three, six through twenty-two, twenty-five through thirty-one and

23  thirty-three was waived pursuant to NRS 34.810 as they should have been raised on direct appeal.

24  *Id.* at 6.  The court denied claims twenty-three and twenty-four, stating they were raised on direct

25  appeal and the law of the case doctrine prevented the court from revisiting those issues.  *Id.* at 8.

26  Finally, the court found claims two, four, five, ten and thirty-two were without merit.  *Id.* at 10-11.

The Nevada Supreme Court affirmed the lower court's denial in part and reversed in part.  Exhibits 132 and 135.  The court first found petitioner's ineffective assistance of counsel claims to be without merit.  Exhibit 135 at 3-7.  Next the court addressed petitioner's ineffective assistance of appellate counsel claims.  *Id.* at 7.  The court determined that to the extent the petitioner raised any of his issues separately from an ineffective assistance of appellate counsel claim, he had waived those issues.  *Id.* at n. 9.  The Nevada Supreme Court then found seventeen of petitioner's ineffective assistance of appellate counsel claims to be without merit.  *Id.* at 8-22.  The court noted that petitioner's claim that appellate counsel failed to argue that the trial court abused its discretion in denying his motion for a new trial was barred by the law of the case doctrine, as the underlying issue, whether he was denied a full opportunity to cross-examine a witness due to prosecutorial misconduct, was litigated on direct appeal.  *Id.* at 18.

With regard to the petitioner's final claim, the Nevada Supreme Court stated that the lower court had abused its discretion in failing to appoint postconviction counsel.  *Id.* at 25.  The court reversed the district court's order with regard to that claim, and stated that the lower court should appoint counsel and allow counsel to supplement the petition as it related to petitioner's claim that appellate counsel failed to argue that his convictions violated due process and double jeopardy.  *Id.*  Remittitur issued July 2, 2002.  Exhibit 136.

Petitioner filed a federal habeas petition in this court.  This court appointed counsel to represent petitioner.  Counsel filed an amended petition for writ of habeas corpus on April 15, 2003.  Respondents moved to dismiss the petition, arguing that the petition was premature as the state habeas corpus proceedings were not finished, and that some of the claims were unexhausted.  This court agreed, and granted the motion to dismiss.  The action was dismissed without prejudice and administratively closed while the petitioner returned to state court.

The state district court appointed counsel to represent the petitioner, and counsel filed a supplemental postconviction petition.  Exhibit 148.  An evidentiary hearing was held, and the state conceded that the two kidnapping counts (counts VII and IX) were incidental to the robbery.  Exhibit

4

146, T 5).  After hearing testimony, the trial judge also dismissed two of the robbery counts.  *Id.*, T

85.  The court denied the rest of the claims contained in the supplemental petition.  Exhibit 151.

Petitioner appeal, and the Nevada Supreme Court affirmed the denial of the lower court's order.

Exhibit 155.

Petitioner moved to reopen the case in this court.  This court granted the motion

(docket #36) and petitioner filed a second amended petition.  On respondents' motion to dismiss the

court found claims one, three, four, five, six, seven, eight, nine, ten, thirteen, fourteen, fifteen,

sixteen, and seventeen to be procedurally defaulted.  Respondents have now filed their answer to the

surviving claims for relief, grounds two, eighteen, nineteen, and twenty, and petitioner had replied.

**II.    Discussion**

A.    Federal Habeas Standard

28 U.S.C. §2254(d), a provision of the Antiterrorism and Effective Death Penalty Act

(AEDPA), provides the standards of review  that this Court applies to the petition in this case:

> An application for a writ of habeas corpus on behalf of a
> person in custody pursuant to the judgment of a State court shall not be
> granted with respect to any claim that was adjudicated on the merits in
> State court proceedings unless the adjudication of the claim --
>
> (1)  resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the
> State court proceeding.

28 U.S.C. §2254(d).

A state court decision is contrary to clearly established Supreme Court precedent,

within the meaning of 28 U.S.C. §2254, "if the state court applies a rule that contradicts the

governing law set forth in [the Supreme Court's] cases" "if the state court confronts a set of facts

that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives

at a result different from [the Supreme Court's] precedent."  *Lockyer v. Andrade*, 538 U.S. 63, 123

5

1  S.Ct. 1166, 1173, 155 L.Ed.2d 144 (2003) (*quoting Williams v. Taylor*, 529 U.S. 362, 405-06, 120

2  S.Ct. 1495, 146 L.Ed.2d 389 (2000), and *citing Bell v. Cone*, 535 U.S. 685, 694, 122 S.Ct. 1843, 152

3  L.Ed.2d 914 (2002).

4        A state court decision is an unreasonable application of clearly established Supreme

5  Court precedent, within the meaning of 28 U.S.C. §2254(d), "if the state court identifies the correct

6  governing legal principle from [the Supreme Court's] decisions but unreasonably applies that

7  principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. at 74, 123 S.Ct. at 1174

8  (*quoting Williams*, 529 U.S. at 413, 120 S.Ct. 1495).  The "unreasonable application" clause requires

9  the state court decision to be more than incorrect or erroneous; the state court's application of clearly

10 established law must be objectively unreasonable.  *Id.* (*quoting Williams*, 529 U.S. at 409, 120 S.Ct.

11 1495).

12     Ground Two

13       In Ground Two, petitioner claims

14     The State used criminal history printouts for prospective jurors during voir dire
without providing the information to defense counsel in violation of Mr.
15     Mercado's Fifth, Sixth and Fourteenth Amendment rights to due process and a
fair trial under the United States Constitution.
16

17       According to petitioner, during jury selection the prosecution, without disclosure to

18 the defense, questioned prospective jurors based in part on information contained in a SCOPE

19 printout.[2]  Once the defense became aware of the SCOPE reports and objected, the court granted the

20 defense access to the reports and then allowed the defense to further question any seated juror which

21 the SCOPE reports referenced.  Petitioner contends that this review and re-questioning was granted

22 in a limited time frame and with significant pressure from the court to move the process along.

23 Petitioner asserts that the court refused the defense request to strike the panel and to start voir dire

24 again because it would consume too much time.

25

26       [2] According to petitioner, SCOPE printouts are criminal history reports generated by the Las
Vegas Metropolitan Police Department (docket #57, fn 2).

1    Respondents note the treatment of this claim by the Nevada Supreme Court which

2    stated in its order denying appeal

3    Mercado claims that he was denied his constitutional right to a fair trial
     because the State failed to disclose sixteen Scope reports prior to its voir dire
4    examination of potential jurors.  Mercado maintains that the State has an unfair
     advantage because it possessed the criminal records of prospective jurors to the
5    exclusion of the defense during a critical state of the proceedings.

6    We conclude that any error created by the State's failure to disclose the
     Scope reports was cured when the district court allowed Mercado access to the
7    Scope reports later in the jury selection process and because Mercado was given
     the opportunity to use the Scope reports to reexamine those jurors who had been
8    seated. [fn 6: Access was allowed prior to the exercise of peremptory challenges.]

9    Exhibit 125, p. 8.  Respondents argue that petitioner has not identified any United States Supreme

10   Court decision disfavoring the use of SCOPE or criminal record histories of potential jurors and

11   argue that the trial court did, in fact, cure any error created by the prosecutions non-disclosure by

12   allowing the defense an opportunity to use the reports and examine the seated jurors based on the

13   information in the reports.

14   A review of the trial transcript suggests to this court that the Nevada Supreme Court's

15   decision on appeal was a reasonable determination of the facts based on the evidence.  The transcript

16   demonstrates that apart from the prosecutor taking offense at petitioner's objection to the

17   undisclosed SCOPE reports, the proceedings were not pressured and did not otherwise undermine

18   petitioner's opportunity to question the jurors based on the information contained in the SCOPE

19   reports.  *See* Exhibit 76, pp 194-212.  Defense counsel preserved the record for appeal and was given

20   the opportunity to question all of the jurors already seated.  He propounded questions for the two

21   jurors which had relevant SCOPE information and declined to question any of the other jurors with

22   SCOPE reports, as those reports showed nothing relevant to voir dire.  *Id.*

23   Petitioner was given a full and fair opportunity to question and uncover any biases of

24   the jury panel.  He was able to protect his client's right to a fair and impartial jury.  *See McDonough*

25   *Power Equip. v. Greenwood,* 464 U.S. 548, 554 (1984).  The state court's denial of this claim was

26   not an unreasonable or contrary application of clearly established federal law and petitioner is not

7

1    entitled to relief on this claim.

2    <u>Ground Eighteen</u>[3]

3    During the penalty phase of Mr. Mercado's trial, the court allowed the prosecution
     to play a videotape showing Mr. Serna with his family at a holiday family dinner.

4    This improper victim impact testimony violated Mr. Mercado's constitutional
     rights guaranteed under the Eighth and Fourteenth Amendments to the United

5    States Constitution.

6    Petitioner contents that the video tape of the victim with his family at a holiday

7    gathering accompanied by sentimental background music was impermissible victim impact evidence

8    which was overwhelmingly prejudicial and inflammatory in nature.  Petitioner argues the evidence

9    violated his due process rights because it rendered the sentence fundamentally unfair, citing *Payne v.*

10   *Tennessee,* 501 U.S. 808, 827 (1991) and *Kelly v. California,* 129 S.Ct. 564 (2008) (Stevens, J.,

11   advisory opinion).

12   Respondents argue that the admission was proper and that petitioner has not shown

13   any prejudice suffered from the evidence because he was not sentenced to death.

14   In *Payne*, the United States Supreme Court held that the Eighth Amendment provided

15   no *per se* bar to victim impact evidence or prosecutorial argument on that subject because "it was

16   relevant to the jury's decision as to whether or not the death penalty should be imposed."  *Id.,* 827.

17   At the sentencing hearing, petitioner presented testimony from members of his family and from a

18   mental health expert all of whom testified about his childhood, his drug use and its impact on his

19   actions and decision-making.  The prosecution put on witnesses who testified about the victim and

20   his family, about the petitioner's mental state and his drug use.  Both sides were given an opportunity

21   to present evidence related to the petitioner's culpability and the victim's nature – "his uniqueness as

22   an individual human being."  *Id.* at 823.

23   The Nevada Supreme Court relied on *Payne* in reaching its decision on this claim on

24   direct appeal.  That court concluded

25

26   ───────────
     [3] Grounds Eleven and Twelve survived the motion to dismiss, but have been abandoned by petitioner as he was granted relief on the claims by the state trial court in post-conviction proceedings. *See,* Docket #57, p. 12 and Exhibit 146.

8

1
2

[T]he district court did not abuse its discretion in admitting the videotape at the penalty hearing.  Just as Mercado was allowed to offer any mitigating evidence the State,

3
4
5
6

"'has a legitimate interest in counteracting the mitigating evidence. . . by reminding the sentencer that just as the murdered should be considered as an individual, so too the victim is an individual whose death represents a unique loss to society and in particular to his family,'" *Booth v. Maryland,* 482 U.S. 496, 517 (1987) (White, J., dissenting.)"

7

*Homick v. State,* 108 Nev. 127, 136, 825 P.2d 600, 606 (1992) (quoting *Payne v. Tennessee,* 501 U.S. 808, 825 (1991)).  We conclude that Mercado's penalty hearing was not fundamentally unfair.

8
9

Accordingly, we reject Mercado's request for a new penalty hearing on the basis of improper victim impact evidence.

10   Exhibit 125, p. 7.

11          Because the state court's decision is not contrary to or an unreasonable application of

12   the holding of the United States Supreme Court in *Payne*, this court cannot offer petitioner relief on

13   this claim.

14                          <u>Ground Nineteen</u>

15
16
17

Trial counsel made numerous errors during trial, including failure to object to important pieces of evidence, failure to file pre-trial motions, and failure to request the dismissal of charges unsupported by evidence.  As a result, Mr. Mercado was denied the effective assistance of counsel in violation of his Sixth and Fourteenth Amendment rights under the United States Constitution.

18          In *Strickland v. Washington*, 466 U.S. 668 (1984), the Court established the standards

19   by which claims of ineffective counsel are to be measured.  In *Strickland*, the Court propounded a

20   two-prong test; a petitioner claiming ineffective assistance of counsel must demonstrate (1) that the

21   defense attorney's representation "fell below an objective standard of reasonableness," and (2) that

22   the attorney's deficient performance prejudiced the defendant such that "there is a reasonable

23   probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

24   different."  *Strickland*, 466 U.S. at 688, 694.

25          Petitioner makes numerous claims of error on the part of his counsel.  These claims

26   must be examined applying a strong presumption that counsel rendered adequate assistance and

9

1   made all significant decisions in the exercise of reasonable professional judgment." *Strickland,* 466

2   U.S. at 690.  Petitioner's claims are made with the benefit of hindsight and a close examination of

3   the record and trial transcript.  However, the prosecution's success in convicting a defendant does

4   not necessarily arise because of defense counsel's performance.  The strength of the evidence cannot

5   always be overcome by the defense.  Second guessing and armchair quarter-backing will almost

6   always find things that could have been done differently.  There is, however, no guarantee that a

7   different approach would achieve a different result.  Petitioner's claims are examined below.

8
           A.    <u>Failure to file pre-trial motion to exclude the note allegedly written by</u>
9   <u>petitioner.</u>

10           Petitioner contends that counsel should have made a pre-trial motion to exclude a note

11   found in petitioner's bedroom rather than just objecting to the note's admission during trial.

12   Petitioner contends the note was more prejudicial than probative because it related to another

13   criminal activity, and that its admission violated petitioner's due process right because it was

14   admitted as character evidence of prior bad act to show his actions in the instant matter conformed

15   with those prior actions.

16           On appeal from the denial of his post-conviction petition the Nevada Supreme Court

17   denied relief finding that petitioner had failed to demonstrate how a pre-trial motion would have

18   been more effective than the motion made by counsel at the hearing.  Exhibit 155, p. 3.  This court

19   agrees.  The record reveals that counsel made objection to the note during trial, but in the absence of

20   the jury with an opportunity to argue his position.  Counsel's arguments were cogent and he

21   advocated strongly for his client.  The court did not rule in his favor.  Petitioner has failed to

22   demonstrate how a pre-trial motion would have produced a different outcome.

23

24              B.    <u>Defense counsel failed to challenge a juror who thought that defendants</u>
                 <u>should have to prove their innocence</u>.

25           A criminal defendant is guaranteed a trial by an impartial jury.  The standard for

26   determining when a prospective juror may be dismissed for cause is whether the juror's views would

1    "prevent or substantially impair the performance of his duties as a juror in accordance with his

2    instructions and his oath."  *Wainwright v. Witt,*  469 U.S. 412, 424 (1985) quoting *Witherspoon v.*

3    *Illinois*, 391 U.S. 510 (1986).

4            During jury selection, one of the veniremen indicated on a written questionnaire that

5    she believed because the district attorney was bringing the case it was likely that the defendant was

6    guilty and that it was his burden to prove his innocence.  Exhibit 76, p. 168.  Counsel questioned the

7    potential juror extensively, explaining the presumption of innocence and the right of the defendant to

8    put the State to its proof and not make any defense at all.  *Id.,* pp. 168-174.  During the questioning,

9    the juror demonstrated that she was not actually biased against the defendant.  The Nevada Supreme

10   Court denied petitioner relief on this claim.  Exhibit 135.  The court determined that petitioner had

11   failed to demonstrate that counsel was ineffective because there was no basis to challenge the juror

12   for cause and counsel's failure to use a peremptory challenge to dismiss the juror was not prejudicial.

13   *Id.*  The court observed

14           When questioned, juror #28 affirmatively indicated that she understood a
             defendant was presumed innocent and that the standard for finding the defendant
15           guilty was beyond a reasonable doubt.  She stated that she accepted that and
             understood that the State must prove its case based upon the evidence against the
16           defendant.  She indicated that she understood that the defendant did not have to
             prove anything.  Juror #28 indicated that she would follow the law as instructed.
17           She stated that she would base her decision upon the evidence that she heard.
             Thus, there was no indication of a state of mind in the juror evincing bias.
18           Therefore, this claim lacks merit.

19   *Id.*  These factual findings are not unreasonable in light of the evidence.  Neither is the court's legal

20   analysis contrary to or an unreasonable application of *Strickland.*  No relief is warranted on this

21   claim from this court.

22           C.    Extensive information existed regarding Carl Flores's instability and bias as a
                   witness.  Trial counsel failed to challenge Flores's testimony and failed to
23                 sufficiently investigate these issues prior to trial.

24           Petitioner claims that counsel failed to properly investigate and obtain witnesses that

25   could have testified to the bad blood between petitioner and the state's "star" witness, Carl Flores

26   and that counsel's examination of Flores was insufficient to uncover the depth of the animosity

1  between the two.  Petitioner argues that this bad blood would have made it unlikely that petitioner

2  would have recruited Flores for or confided in him about the robbery.  Petitioner does not identify

3  the witnesses that counsel should have called except Fores's brother, who was in prison.

4          According to the Nevada Supreme Court's order on appeal, counsel did cross-

5  examine Flores regarding his relationship with petitioner, which questioning allowed the jury to

6  evaluate his bias and weigh his testimony accordingly.  Exhibit 155 *see also* Exhibit 83, p. 10.

7  Notably, Felix Austria, another witness, testified that petitioner trusted Flores and that was one of the

8  reasons he was recruited to participate in the robbery.  Exhibit 87, p. 51.

9          Petitioner has failed to show how counsel's performance fell below the standard of

10  performance applicable in this case or that some change in counsel's strategy in this instance would

11  have changed the outcome.  No relief is warranted.

12          D.    Mr. Mercado's trial counsel was ineffective for failing to challenge Carl
               Flores' testimony as a paid informant pretrial and to appropriately argue that
13             the prosecution improperly presented FBI Agent Kelliher's testimony.

14          Petitioner alleges that counsel failed to highlight the fact that Flores was a paid FBI

15  and police informant and that his failure to do so was ineffective representation.  He further alleges

16  that the testimony of FBI Agent Kelliher was improper because she refused to testify whether Flores

17  had been an informant in any other cases.

18          The first part of the claim is belied by the record.  Counsel cross-examined Flores and

19  brought out that he had received some twenty-seven hundred dollars from police and that he might

20  be eligible for a twenty-five thousand dollar reward following his testimony against petitioner.

21  Exhibit 83, pp. 21-26.  Count elicited Flores's testimony about payments of $200, $500, and $2000

22  dollars from police.  Counsel brought out Flores's previous testimony that anything he asked the

23  police to do for him, the police did.  *Id.*

24          As for the testimony of Agent Kelliher, petitioner, citing only Ninth Circuit case law,

25  claiming that the Nevada Supreme Court's decision was contrary to federal law.  This, however, is

26  not the standard to which the state court's decision are held.  Only decisions that are contrary to or an

1  unreasonable application of clearly established federal law as determined by the United States

2  Supreme Court warrants relief from this federal court.  28 U.S.C. § 2254(d); *see also, Riley v. Payne,*

3  352 F.3d 1313, 1322 (9th Cir. 2003).  Moreover, the testimony of Agent Kelliher was that she had

4  developed a relationship with Flores where she sought general information, that he had given her

5  information on other cases, that she had given him money after she received information in the

6  instant case, but that she was not at liberty to discuss any other cases.  Exhibit 83, pp. 49-53.  Thus,

7  counsel was able to present for the jury's use the fact that Flores was receiving money for his

8  assistance in this case and that he had given information in other cases.  In other words, Flores was a

9  paid informant for the FBI and local police.  Petitioner has not shown how information about the

10  specifics of other cases would have decreased Flores's credibility before the jury.  He has failed to

11  demonstrate that counsel's performance in this instance was deficient or that the Nevada Supreme

12  Court's decision was wrong in light of the restrictions placed by AEDPA and § 2254.

13          E.      Mr. Mercado's trial counsel were ineffective for eliciting on cross-
                    examination the only positive identification of Mr. Mercado as a participant in
14                  the offense.

15          Petitioner contends that counsel was ineffective when he questioned witness Husted

16  and as a result elicited testimony that petitioner was one of the robbers.  He suggests that counsel

17  should have foreseen this identification and was ineffective for failing to do so.

18          In this instance, the witness had testified that the robbers wore masks or bandanas

19  over their faces and that all she could see was his eyes and hair.  Despite this testimony, the witness

20  then identified petitioner.  Petitioner argues that this eye witness testimony was particularly

21  prejudicial and that counsel should never had pursued the questioning.  At the post-conviction

22  evidentiary hearing, counsel testified that he asked the question of Husted because the discovery

23  materials indicated that none of the witnesses at the Renata on the night of the robbery attempt were

24  able to identify any of the participants.  Exhibit 146, pp. 53-54.  This was, therefore, a strategic

25  decision by counsel in hopes of leaving the jury with the indelible impression that no one could say

26  for sure who was the shooter.  *Id.*  The Nevada Supreme Court's analysis of the point is not invalid.

1   There were at least two other witnesses that put petitioner at the crime scene – his co-defendant,

2   Austria, and Carl Flores.  Petitioner's argument that these witnesses's testimony was biased, each for

3   his own reason, is valid.  But that bias was brought to the jury's attention through cross-examination.

4

5                        F.         <u>Trial counsel was ineffective for failing to challenge Felix Austria's biased</u>
                                    <u>testimony and fully elicit this critical credibility evidence.</u>

6           Petitioner contends that counsel failed to bring out that Felix Austria received a plea

7   bargain benefit for his testimony against petitioner and that trial counsel was ineffective in failing to

8   question Austria as to whether he or another individual named Rodan were more likely to be the

9   shooter.

10           At trial Austria was called by the prosecution and testified about the planning and

11   botched execution of the Renata robbery.  *See* Exhibit 86, pp. 104-161, and 87, pp. 11-87.  He

12   testified that he, the petitioner, and two other gang members went to the Renata and attempted to

13   carry out a plan to rob the casino cage in hopes of netting between eighty and one hundred thousand

14   dollars.  He testified that he had been charged with keeping the bartender and the patrons quiet and

15   still while petitioner was supposed to enter the cage and take the money from the drawers.  He

16   further testified that the bartender made a move toward what Austria assumed was an alarm button

17   and Austria jumped upon the bar and shot at the bartender two times, striking him once in the

18   buttocks.  Austria further testified that between his first and second shots he heard two other shots.

19   He was unable to identify where those shots came from.  Austria further testified that once the

20   shooting was over he called for his companions to "get out" and he and J. George Chuatoco ran out a

21   side entrance and jumped into the waiting "get away" car driven by Otto Kaufman.  According to

22   Austria, petitioner was not with Austria and Chuatoco, and Kaufman drove off without him.

23           Austria was asked by the prosecutor whether Rodan had been present on the

24   November 25th robbery attempt.  Austria testified that Rodan had participated in the planning of the

25   robbery, but had "backed out" at the last minute and was not present.  Exhibit 87, pp. 26 and 63-64.

26

1        Based on this testimony, petitioner's assertion that counsel should have questioned

2   Austria whether Rodan was the shooter instead of petitioner is unpersuasive.  Austria had already

3   testified that Rodan was not present.  If Rodan was not even present, he could not have been the

4   shooter.  However, despite this testimony, defense counsel did ask Austria whether he had falsely

5   told police that petitioner had shot the victim, when it was Rodan who actually did it.  Exhibit 87, pp.

6   67-68.

7        As for cross-examination regarding Austria's deal with the prosecution and his related

8   bias, counsel quite thoroughly questioned the witness on that point and on the benefit he received for

9   his testimony.  Exhibit 87, pp. 63-64, 83-84.  This claim is without merit and the Nevada Supreme

10  Court's decision was appropriate under 28 U.S.C. § 2254.

11
                    G.    Trial counsel was ineffective for calling Felix Austria as a defense witness
12                        during the penalty phase.

13       Petitioner contends that counsel failed to properly investigate for mitigating evidence

14  to present in the penalty phase of the trial.  He complains that calling Felix Austria, petitioner's

15  cousin, to testify that he was responsible for petitioner's drug use, gang involvement, and

16  participation in the robbery and its planning was inappropriate and self-serving for Austria.

17       A court deciding an ineffectiveness claim must judge the reasonableness of counsel's

18  conduct on the facts of the particular case, viewed as of the time of counsel's conduct.  *Strickland v.*

19  *Washington,* 466 U.S. at 690.   Strategic decisions of counsel, such as what witnesses to call and

20  evidence to present are virtually unassailable if made after reasonable investigation or a reasonable

21  decision that further investigation is unnecessary.  *Id.,* at 691.  These decisions are examined with a

22  "heavy deference to counsel's judgment." *Id.*

23       The Nevada Supreme Court believed Austria's testimony in the penalty phase did

24  provide mitigation for petitioner's actions.  This court agrees.  Austria's testimony was an attempt to

25  demonstrate that petitioner was young and unduly influenced by his older cousin, someone who had

26  pledged to look out for him, but who had been a negative influence.  At the post-conviction

15

1    evidentiary hearing, counsel explained the basis for his to use Austria at the penalty phase.  Counsel

2    testified that Austria felt bad about the damaging testimony he offered in the guilt phase and wanted

3    to help if he could.  Counsel testified that he used Austria's testimony because he wanted to show

4    that Austria had a "Svengali like" influence over petitioner - so as to diminish petitioner's culpability

5    in the eyes of the jury.  Exhibit 146, pp. 58, 60.  No relief is warranted on this claim.

6            H.      Trial counsel erred in failing to file a pretrial motion to preclude the requiring
                    of Mr. Mercado to display his tattoos to the jury when Mr. Mercado did not
7                    testify.

8            Petitioner contends that counsel should have prevented him from having to show his

9    tattoos by filing a pre-trial motion.

10           The issue was presented at the very end of evidence and counsel objected to petitioner

11   having to show his tattoos, but the court overruled the objection.  The Nevada Supreme Court found

12   that petitioner "failed to demonstrate that counsel knew before trial that the State would make such a

13   request" and that he failed to show that the outcome of the trial would have been different if such a

14   motion had been made.  Respondents point out that petitioner suffered no prejudice as a result

15   because he was never sentenced under the gang enhancement.  The state supreme court's decision

16   was not contrary to or an unreasonable application of clearly established federal law.  Petitioner

17   failed to show how he was prejudiced by this omission.  No relief is warranted.

18           Grounds 19 (I) and (J) have been deleted by petitioner.

19
            K.      Counsel was ineffective by failing to move to dismiss before, during or after
20                   trial on appeal all counts of coercion.

21           Petitioner contends that trial counsel should have moved to dismiss the coercion

22   charges because there was insufficient evidence to support the charge and had counsel moved to

23   dismiss the charges, the outcome of the trial would have been different.

24           On appeal the Nevada Supreme Court found there had been sufficient evidence at trial

25   to support the conviction.  The United States Supreme Court formulates the sufficiency of the

26   evidence questions as "whether, after viewing the evidence in the light most favorable to the

prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979).  Under Nevada law, coercion occurs when a reasonable victim would have believed that the defendant presented an immediate threat of physical harm at the time the threat was made.  *Santana v. State,* 112 Nev. 1458, 1461, 148 P.3d 741, 745 (2006).

Petitioner suggests that because some of the people in Renata's at the time of the robbery attempt did not see a gun when they were ordered to freeze or get down, or don't move, and because at least two of them fled from the bar into a nearby restroom, these individuals could not have felt an immediate threat of physical harm.  This argument is not persuasive.  A reasonable person, confronted by several men in masks, barking threatening orders in the course of an attempted robbery, may, despite not seeing any actual weapons, feel a threat of harm.  Moreover, even if they feel a threat of immediate harm, some reasonable victims would risk that harm in order to escape to safety.

The Nevada Supreme Court reviewed this claim and determined there was sufficient evidence to support the charges and the conviction.  The state high court's decision was not unreasonable.  No relief is warranted on this claim under 28 U.S.C. §2254.

        L.    <u>Trial counsel failed to file a pre-trial motion to dismiss or move for an advisory verdict of acquittal as there was insufficient factual support for the gang sentencing enhancement on each of Mr. Mercado's eighteen convictions.</u>

In this claim, petitioner argues that there was insufficient evidence to support the gang enhancement to the various crimes he was charged with committing and that counsel was ineffective for failing to move to dismiss the enhancement or ask for a directed verdict.  Nevada law requires that a crime be committed "knowingly for the benefit of, at the direction of, or in affiliation with, a criminal gang," and "with the specific intent to promote, further or assist the activities of the criminal gang...."  NRS 193.168(1).

1        Because petitioner's sentence was not enhanced under this statute (exhibit 110), he

2   has failed to show how he was prejudiced by counsel's performance.  No relief is warranted on this

3   claim.

4              M.     <u>Trial counsel failed to adequately prepare their expert witness used during the
                     penalty phase.</u>

5

6        Petitioner complains that trial counsel did not prepare Dr. Roitman, the psychiatrist

7   engaged to testify on his behalf at the penalty phase and that counsel wrongly provided the doctor

8   with a copy of a report written by Dr. Mortillaro, even though that report contained language the

9   defense did not like, knowing that this disclosure would require they provide Mortillaro's report to

10  the prosecution.  Petitioner's argument focuses on counsel' obligation to investigate the defendant's

11  background and family history.  Petitioner contends counsel should have conducted this investigation

12  and then presented the information to Dr. Roitman.

13        In a capital case, it is necessary for counsel to investigate the defendant's social

14  history in order to present as strong a case in mitigation as possible.  "In judging the defense's

15  investigation . . ., hindsight is discounted by pegging adequacy to 'counsel's perspective at the time'

16  investigative decisions are made, and by giving a 'heavy measure of deference to counsel's

17  judgments.' " *Rompilla v. Beard*  545 U.S. 374, 381 (2005) (quoting *Strickland v. Washington*, 466

18  U.S., at 689, 691).  In this instance, counsel testified that Dr. Roitman was an excellent defense

19  witness who was able to help the jury understand the defendant as an individual entitled to

20  compassion in order to avoid the death penalty.  Counsel testified that was the reason the doctor was

21  called and the death penalty was not imposed, making the witness effective in counsel's view.

22  Exhibit 146.

23        At the penalty hearing, Dr. Roitman testified that petitioner would function well in a

24  structured environment.  Exhibit 93.  He testified about petitioner's childhood and his family history,

25  noting he had been "raised by the street, not a family," that his father had died and petitioner had

26  been heavily influenced by his peers while his mother failed to take any control or offer any

18

guidance.  The doctor was aware of and noted petitioner's drug use and his history of involvement in illegal activities.  Thus, it is clear that petitioner's family history and background had been investigated and reviewed by the doctor.  Dr. Roitman acknowledged he had reviewed an evaluation conducted by another doctor, whom the state then called to testify that petitioner suffered from a schizoid antisocial borderline personality.

The jury took the testimony and decided that petitioner should not be sentenced to death.  Thus, counsel's tactic to use the witness to prevent a death sentence was not unreasonable.  Furthermore, petitioner does not provide any information that counsel should have discovered if he had done further investigation.  He suffered no actual prejudice from this aspect of counsel's performance and no relief is warranted.

        N.      <u>Trial counsel failed to move to limit the improper victim impact statements during the penalty hearing</u>.

Here petitioner claims that counsel should have moved to preclude the "extensive, emotional, and unrestrained testimony from multiple members of the victim's family."  This testimony, according to petitioner, rendered the penalty phase of the trial fundamentally unfair.

As discussed previously, victim impact testimony is properly admitted in the penalty phase of the trial under federal and Nevada law.  *See, Payne v. Tennessee,* 501 U.S. 808(1991) and *Kelly v. California,* 129 S.Ct. 564 (2008) (Stevens, J., advisory opinion); *see also Homick v. State,* 108 Nev. 127, 136, 825 P.2d 600, 606 (1992) .  Counsel for the defense offered strong, but unsuccessful argument to the court to limit the amount and type of victim impact evidence at the start of the penalty hearing.  He also objected to the testimony of the fourth Serna family member, and that witness was not called to testify.

The Nevada Supreme Court found that petitioner could not prevail on this claim because petitioner had not shown that the evidence presented was excessive.  This court agrees with the state court's determination and petitioner has not met his burden under 28 U.S.C. § 2254 to obtain relief.

O.     <u>Mr. Mercado's trial counsel failed to object to pervasive prosecutorial misconduct that occurred during Mr. Mercado's penalty hearing closing arguments.</u>

Petitioner contends the prosecutor continually violated his due process rights during the penalty arguments and counsel's failure to object violated his right to effective assistance of counsel.   Petitioner acknowledges that counsel did object in some instances, but contends that the prosecutors arguments were egregious and inflammatory and blatant attempts to demonize the petitioner.  Petitioner notes the prosecutor improperly argued that petitioner was a direct and personal threat to the jurors themselves; he compared the constitutional rights afforded petitioner by the court to those denied the victim by the petitioner; and he misstated petitioner's mental state or condition without objection from counsel.

The United States Supreme Court set forth the standard for deciding claims of prosecutorial misconduct in the case of *Darden v. Wainwright* 477 U.S. 168 (1986).  There the Court determined that it "is not enough that the prosecutors' remarks were undesirable or even universally condemned. The relevant question is whether the prosecutors' comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* at 181. In this case the remarks did not violate petitioner's due process rights.

A review of the argument transcript reveals that counsel objected numerous times, but that his objections were continually overruled by the court.  Counsel can make a tactical decision to limit objections when it might appear that it is merely an attempt to throw the opponent off the track or to undermine the opponents arguments unfairly.  Because his objections were having no impact on the direction of the argument, it is feasible to conclude that counsel made a conscious decision to limit his objections.  The Nevada Supreme Court decision on this claim is valid.  In addition, petitioner has not demonstrated that he was prejudiced by the arguments for a death sentence, since he was not sentenced to death.

Petitioner has failed to demonstrate that he received ineffective assistance of counsel at trial or during the penalty phase of the proceedings.  Ground Nineteen shall be denied.

1      <u>Ground Twenty</u>

2          <u>Appellate counsel failed to raise a number of issues including errors
           during jury selection, concerns over a biased paid informant, concerns</u>
3          <u>regarding the testimony of a co-defendant who received favorable
           treatment in return for his testimony, and erroneous jury instructions.</u>
4          <u>Because of these failures, Mr. Mercado was denied the effective assistance
           of appellate counsel in violation of his sixth and fourteenth amendment</u>
5          <u>rights under the United States Constitution.</u>

6          Petitioner raises several subparts to this claim as follows:

7          (A)    Appellate counsel filed to raise the issue that a juror who indicated that she
                  believed that Mr. Mercado was probably guilty because the prosecution had
8                 gone to the trouble of bringing a case and that he should have to prove his
                  innocence was not excused.
9
           (B)    Appellate counsel failed to raise the issue that a Filipino juror was excused by
10                the prosecution and the prosecution failed to present a valid, race-neutral
                  reason for exercising a peremptory challenge against her.
11
12         (C)    Appellate counsel failed to raise the issue of the trial court limiting testimony
                  regarding Carl Flores's role as an FBI informant.

13         (D)    Appellate counsel failed to raise the issue that the State engaged in
                  prosecutorial misconduct by improperly bolstering Felix Austria's credibility
14                during Mr. Mercado's trial.

15         (E)    Appellate counsel erred in failing to raise the issue of Mr. Mercado's Fifth
                  Amendment rights when the court required Mr. Mercado to display his tattoos
16                to the jury even though Mr. Mercado did not testify.

17         (F)    Appellate counsel failed to raise the issue of improper jury instructions
                  regarding reasonable doubt.
18
           (G)    Appellate counsel failed to raise the issue of the improper jury instruction
19                regarding premeditation and deliberation.

20         (H)    Appellate counsel filed to raise the issue of improper jury instruction
                  regarding malice.
21
22         (I) and (J) are claims that appellate counsel did not appeal the sufficiency of the

23   evidence to support attempted robbery convictions and kidnaping with the use of a deadly weapon

24   convictions have been abandoned, as the state dismissed these convictions in post-conviction

25   proceedings.

26         (K)    Appellate counsel was ineffective for failing to challenge all counts of
                  coercion on appeal.

                                            21

(L)     Appellate counsel failed to raise the issue that there was insufficient factual support for the gang sentencing enhancement on each of Mr. Mercado's eighteen convictions.

(M)     Appellate counsel failed to challenge the prosecution's failure to present sufficient evidence to convict Mr. Mercado.

(N)     Appellate counsel failed to rise the issue of improper victim impact statements during the penalty hearing.

(O)     Appellate counsel failed to object to the pervasive prosecutorial misconduct that occurred during Mr. Mercado's penalty hearing closing arguments.

The Due Process Clause guarantees a criminal defendant effective assistance of counsel on his first appeal as of right. *Evitts v. Lucey*, 469 U.S. 387, 391-405, 105 S.Ct. 830, 833-40, 83 L.Ed.2d 821 (1985). Thus, petitioner in this instance must demonstrate that his appellate counsel's performance undermined the appeal process and prejudiced his appeal. *See Miller v. Keeney,* 882 F.2d 1428, 1433-1434 (9th Cir. 1989). In his attempts to meet this burden, petitioner points to numerous claims he believes appellate counsel should have brought to the Nevada Supreme Court on direct appeal.

As to those claims which underpin parts of Ground Eighteen: subparts (A), (C), (K), (L), (N), and (O), petitioner cannot demonstrate the requisite prejudice because he had no likelihood of success on the merits of the claims as discussed supra. As a result, it cannot be said that appellate counsel was ineffective for failing to bring the claims on appeal. Petitioner is not entitled to relief on these sub-claims.

As part (B) of this claim, petitioner contends that appellate counsel failed to raise the issue that a Filipino juror was excused by the prosecution and the prosecution failed to present a valid, race-neutral reason for exercising a peremptory challenge against her.

A criminal defendant is entitled to be tried before an impartial jury. U.S. Const., amend. VI. The composition of that jury may not be determined based on racial or other prohibited discrimination. *Sims v. Georgia,* 389 U.S. 404, 407 (1967); *Norris v. Alabama,* 294 U.S. 587, 589 (1935). The jury selection process must be free from improper discrimination and "the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race.

22

1    . . ." *Batson v. Kentucky,* 476 U.S. 79, 89 (1986).

2            In this instance, trial counsel raised a *Batson* objection to the state's excusing a young

3    Filipino woman from the jury panel.  Exhibit 77, pp. 100-107.  The prosecutor offered his reasons for

4    excusing the woman, noting her young age, her responses to questions on the jury questionnaire

5    which indicated a bias against police officers, particularly traffic officers, and his and his co-

6    counsel's poor evaluation of the potential juror made prior to jury selection based solely upon the

7    questionnaires.  *Id.*  The court accepted this reasoning, noting that both parties had agreed to excuse

8    another young woman of Korean descent because of family obligations the young woman had with

9    an new baby.  *Id.,* p. 107.   The court denied the challenge, finding the state had a permissible

10   racially neutral criteria for the dismissal of the potential juror.  *Id.*

11           Petitioner's reliance on *Eagle v. Linahan,* 279 P.3d 926 (11th Cir. 2001) is misplaced.

12   In *Eagle,* the *Batson* violation was clear in that the trial court did not focus its analysis on the

13   reasoning offered by the prosecution for its peremptory challenge decisions.  Rather, the court merely

14   noted that both sides were "doing what they could to get the different races off" *Id.,* p. 941.  Thus,

15   the error was obvious in that the challenge and the court's decision was not made or decided under

16   the proper legal standards.  Here, the petitioner merely challenged the dismissal of a single venire

17   person noting that person was the sole Filipino on the panel.  Here also, the court heard the state's

18   reasoning for its challenge to that juror and found those reasons to be racially neutral.  The court's

19   handling of the *Batson* challenge was correct.  Counsel raised five significant errors on appeal.  This

20   claim had no real chance of success, considering the record, and appellate counsel was not

21   ineffective in determining not to include it on appeal.  As the Nevada Supreme Court said,

23           "[T]he issue comes down to whether the trial court finds the prosecutor's
     race-neutral explanations to be credible." [fn 28.  *Miller-El v. Cockrell,* 537 U.S.
24   322, 339 (2003).] A trial court's credibility finding may be influenced by factors
     including "the prosecutor's demeanor; by how reasonable, or how improbably, the
     explanations are; and by whether the proffered rationale has some basis in
25   accepted trial strategy." [fn 29. *Id.*] Because the trial court's finding on the issue
     of discriminatory intent largely turn on evaluations of credibility, they are entitled
26   to great deference [fn 30. *See Thomas v. State,* 114 Nev. 1127, 1137, 967 P.2d
     1111, 1118 (1998)] and will not be overturned unless clearly erroneous. [fn 31.

                                                    23

1  *Libby v. State,* 115 Nev. 45, 55, 975 P.2d 833, 839 (1999) (quoting *Hernandes v.*
2  *New York,* 500 U.S. 352, 369 (1991)).] We conclude the district court's findings
   are not clearly erroneous and Mercado failed to demonstrate this issue had any
3  likelihood of success on direct appeal.  Accordingly, we conclude the district
   court did not err in denying this claim.

4  Exhibit 155, pp. 15-16.  This determination is neither an unreasonable or a contrary application of

5  clearly established federal law.  No relief is available under 28 U.S.C. § 2254.

6          In part (D) petitioner argues appellate counsel failed to raise the issue that the State

7  engaged in prosecutorial misconduct by improperly bolstering Felix Austria's credibility during Mr.

8  Mercado's trial.  He notes the prosecution bolstered Austria's testimony on redirect by asking

9  whether Austria was telling the truth.  The prosecutor elicited from Austria that his testimony at trial

10 was more detailed than that given to the police because police didn't question him to the same extent

11 as the prosecution did at trial.  Petitioner notes that the state further asked Austria to confirm that his

12 plea agreement required him to testify truthfully or the benefits of the agreement would have been

13 withdrawn.

14          "Vouching [for the truthfulness of a State witness] is especially problematic in cases

15 where the credibility of the witnesses is crucial, and in several cases applying the more lenient

16 harmless error standard of review, [courts] have held that such prosecutorial vouching requires

17 reversal." *United States v. Molina*, 934 F.2d 1440, 1445 (9th Cir. 1991). A criminal conviction will

18 not be overturned on the basis of a prosecutor's comments standing alone, unless the comments,

19 viewed in context, affected the fairness of the trial. *U.S. v. Young*, 470 U.S. 1, 11 (1985).  Vouching

20 by the prosecutor, must be examined with consideration of several factors.  *U.S. v. Necochea,* 986

21 F.2d 1273 (9th Cir. 1992). Those factors include, "the form of vouching; how much the vouching

22 implies that the prosecutor has extra-record knowledge of or the capacity to monitor the witness's

23 truthfulness; any inference that the court is monitoring the witness's veracity; the degree of personal

24 opinion asserted; the timing of the vouching; the extent to which the witness's credibility was

25 attacked; the specificity and timing of a curative instruction; the importance of the witness's

26 testimony and the vouching to the case overall."  *Id.,* at 1278.

24

1    In this instance, Austria's testimony was crucial to the prosecution, as he was a

2 member of the group of robbers, he identified petitioner as participating in the robbery and as the

3 person who shot and killed Mr. Serna.  Exhibits 86, p. 105 through Exhibit 87, p. 76.  On cross

4 examination, petitioner's counsel attempted to attack Austria's credibility by bringing out that he had

5 entered into a plea agreement and had received consideration for his testimony - showing bias.  In

6 response to this questioning, on redirect, the prosecutor asked the witness whether his testimony

7 regarding what happened at the Renata Bar was true or whether, as the defense had suggested, he

8 merely told the police what they wanted to hear.  Defense counsel objected to the question on the

9 basis of vouching, but the objection was overruled.

10    In *Necochea*, above, the prosecutor's actions in referencing the plea agreement, which

11 were similar to those here, were found not to constitute vouching. The court found that a

12 prosecutor's reference to the plea agreement and the promise of testimony was not a guarantee that

13 the testimony was truthful and was not vouching.  *Id.*   In this case, he Nevada Supreme Court was

14 correct in its determination of this claim.

15    In subpart (E) petitioner argues counsel should have claimed that the trial court

16 improperly required petitioner to display his tattoos in violation of his Fifth Amendment right against

17 self incrimination.  As the Ninth Circuit and the Nevada Supreme Court have both said, a

18 defendant's rights against self-incrimination are not undermined by a requirement that he display

19 physical characteristics.  *United States v. Bay,* 762 F.2d 1314, 1315-16 (th Cir. 1984); *Jacobs v.*

20 *State,* 91 Nev. 155, 158, 532 P.2d 1034, 1036 (1975). This conclusion is founded in *United States v.*

21 *Dionisio,* 410 U.S. 1, 5-6 (1973)("It has long been held that the compelled display of identifiable

22 physical characteristics infringes no interest protected by the privilege against compulsory

23 self-incrimination.") Tattoos are a physical attribute which is not protected as testimonial.  Thus, the

24 Nevada Supreme Court decision cannot be said to be contrary to or an unreasonable application of

25 clearly established federal law allowing this court to afford relief under 28 U.S.C. § 2254.

26

1    Subpart (F) claims appellate counsel failed to raise the issue of an improper

2   reasonable doubt jury instruction.  The Ninth Circuit Court of Appeals has expressly approved the

3   reasonable doubt instruction given during petitioner's trial.  *Ramirez v. Hatcher,* 136 F.3d 1209,

4   1214 (9th Cir. 1998).  Moreover, as petitioner notes, that court has "foreclose[d]" such claims as

5   petitioner raises here.   *Nevius v. McDaniel,* 218 F.3d 940-944-945 (9th Cir. 2000).  No relief is

6   warranted from this court on this claim.

7    Subpart (G) claims counsel improperly failed to raise the claim that the jury

8   instruction on premeditation and deliberation were in error.

9    The Nevada Supreme Court denied relief on this claim stating:

10    We conclude that appellant failed to demonstrate that appellate counsel's
     performance was deficient or that this issue had a reasonable probability of
11    success on appeal.  The jury was properly instructed pursuant to the controlling
     statutes and caselaw in effect at the time of his crime and trial. [fn 33.  NRS
12    175.211 (setting forth definition of reasonable doubt); NRS 200.010 (defining
     murder); NRS 200.020 (defining malice); NRS 200.030 (setting forth the degrees
13    of murder); *Kazalyn v. State,* 108 Nev. 67, 75-76, 825 P.2d 578, 583-84 (1992)
     (holding nearly identical instructions of premeditation and malice aforethought
14    adequately instructed the jury); *Lord v. State,* 107 Nev. 28, 40, 806 P.2d 548, 555-
     56 (1991) (holding that the definition of reasonable doubt set forth in NRS
15    175.211 satisfies due process); *see also Leonard v. States,* 117 Nev. —, 17 P.3d
     397, 411 (2001) (holding no error in providing *Kazalyn* jury instruction); *but see*
16    *Byford, v. State,* 116 Nev. 215, 233-37, 994 P.2d 700, 712-13 (2000)
     (reconsidering the *Kazalyn* instruction and determining that further instruction
17    explaining deliberation would be preferable.).] Therefore appellant is not entitled
     to relief.

18

19   Exhibit 135, p. 22.

20    As the court noted, in 2000, the Nevada Supreme Court determined that the jury

21   instruction at issue here – the Kazalyn instruction –  "blurs the distinction between first and second

22   degree murder," and crafted a new more comprehensive instruction.  *See Byford v. State,* 116 Nev.

23   215, 233-237, 994 P.2d 700, 712-713 (2000).  However, the court also held that the change in the

24   law was not one of constitutional dimensions warranting retroactive application to convictions that

25   became final prior to the *Byford* decision.  *Id.*

26

26

1     Later, in *Polk v. Sandoval,* 503 F.3d 903,909 (9th Cir. 2007) and *Chambers v.*

2  *McDaniel,* 549 F.3d 1191, 1199 (9th Cir. 2008), the circuit court found the Kazalyn instruction

3  violated due process because it relieved the state of its burden to prove every element of the crime of

4  first degree murder.  *Polk*, 503 F.3d at 909.  Because the court determined the state court's decision

5  on the *Kazalyn* instruction was contrary to clearly established federal law, it reviewed the claim *de*

6  *novo*.[4]  The court applied a harmless error analysis wherein relief is warranted only if "the error had a

7  substantial and injurious effect or influence in determining the jury's verdict." *Id.,* at 911, citing

8  *Brecht v. Abrahamson,* 507 U.S. 610, 637 (1993).

9     The same analysis must be applied to this case as well.  Here the strongest evidence of

10  petitioner's involvement was the testimony of co-defendant Felix Austria and  paid  FBI, Carlos

11  Flores.  Austria's testimony arose as the result of a plea negotiation.  He testified that petitioner and

12  two others participated with him in the robbery attempt, that he, petitioner, and J. George Chuatoco

13  entered the bar, told the patrons and employees to get down and not move, that he was covering the

14  bar area when the bartender moved toward what Austria suspected was an alarm, whereupon, Austria

15  fired his weapon, striking the bartender and wounding him.  Austria further testified that between the

16  two shots he fired he heard another series of two gun shots, but was unsure from where the shots

17  originated.  He stated he immediately called for everyone to "get out" and he and Chuatoco ran for

18  an exit.  Petitioner did not exit the bar and Otto Kaufman drove the group away from the scene.

19  According to the testimony, petitioner told Austria that he had run out of the bar after shooting Serna

20  and had hidden in the area for several hours.

21     Carlos Flores also testified that petitioner had told him about the plan to rob Renata's

22  and had asked him to participate.  He testified that after the robbery, petitioner admitted to him that

23  he had shot Mr. Serna as he tried to run away.  Various patrons and employees of Renata's also

24

---

25     [4] The court found the Nevada Supreme Court's decision was contrary to *In re Winship*, 397 U.S.
   358, 364  (1970) which holds that "the Due Process Clause protects the accused against conviction
26  except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which
   he is charged.").

1    testified.  Patrick Pino was in the kitchen and testified he saw a short man with black hair chase Mr.

2    Serna into the kitchen and shoot him.  At least three other witnesses confirmed the man who shot

3    Serna was short with black hair, dark skin and a Filipino accent.  Petitioner fits that description.

4            Based on the evidence presented at trial, the jury properly concluded that the killer –

5    acted deliberately and intentionally to kill Serna and that he did so after having thought about doing

6    it, as evidenced by the fact that he chased the victim and then shot and killed him.  Thus, while the

7    instruction given was flawed, as later acknowledged by the Nevada Supreme Court, all the essential

8    elements of first degree killing were present and proved beyond a reasonable doubt to the jury.  In

9    this case, the Kazalyn instruction could not have had a substantial and injurious effect or influence in

10   determining the jury's verdict.

11           Part (H) claims appellate counsel failed to raise the issue of an improper jury

12   instruction regarding malice.  Petitioner argues the instruction given created a presumption of malice

13   in violation of NRS 47.230 and that the Nevada Supreme Court's decision on this claim was an

14   unreasonable application of clearly established federal law.

15           NRS 47.230 provides:

16   1.    In criminal actions, presumptions against an accused recognized at common
           law or created by statute, including statutory provisions that certain facts are
17         prima facie evidence of other facts or of guilt, are governed by this section.

18   2.    The judge shall not direct the jury to find a presumed fact against the
           accused.  When the presumed fact establishes guilt or is an element of the
19         offense or negatives a defense, the judge may submit the question of guilt or
           of the existence of the presumed fact to the jury, if, but only if, a reasonable
20         juror on the evidence as a whole, including the evidence of the basic facts,
           could find guilt or the presumed fact beyond a reasonable doubt.  Under
21         other presumptions, the existence of the presumed fact may be submitted to
           the jury if the basic facts are supported by substantial evidence, or are
22         otherwise established, unless the evidence as a whole negatives the existence
           of the presumed fact.

23
     3.    Whenever the existence of a presumed fact against the accused is submitted
24         to the jury, the judge shall give an instruction that the law declares that the
           jury may regard the basic facts as sufficient evidence of the presumed fact
25         but does not require it to do so.  In addition, if the presumed fact establishes
           guilt or is an element of the offense or negatives a defense, the judge shall
26         instruct the jury that its existence must, on all the evidence, be proved
           beyond a reasonable doubt.

1

2          The  jury instruction offered to petitioner's jury regarding express or implied malice

3   read

4          1.       Express malice is that deliberate intention unlawfully to take away the life of a fellow
                    creature, which is manifested by external circumstances capable of proof.

5          2.       Malice *may* be implied when no considerable provocation appears, or when all the
6                   circumstances of the killing show an abandoned and malignant heart.

7   Exhibit 88, Instruction No. 7 (emphasis added).

8          The instruction given to the jury in petitioner's trial clearly gives a permissive, not

9   mandatory, directive despite the exact wording of the Nevada statute defining malice.  *See* NRS

10  200.020.  The word "may," as defined by Merriam-Webster's Collegiate Dictionary, is one used to

11  indicate the possibility or probability of a thing happening, indicating permission to do some thing.

12  *Id.*, 10th Ed., p. 717.  Thus, its use cannot and does not create a mandatory presumption in this jury

13  instruction.  Moreover, the use of the word "may" is preferred and has been approved by the Nevada

14  Supreme Court as proper to avoid any unconstitutional lessening of the burden of proof borne by the

15  State.  *See Leonard v. State*, 117 Nev. 53, 78-79, 17 P.3d 397, 413 (2001); *Cordova v. State*, 116

16  Nev. 664, 6 P.3d 481, 482-83 (2000) (use of word "may" eliminates the issue of a mandatory

17  presumption).  In light of this, petitioner's contention that this claim would have been successful if it

18  had been brought to the Nevada Supreme Court on appeal fails.  This claim does not warrant relief,

19  as the instruction does not violate his constitutional due process rights.

20         Subpart (I) and (J) were excluded because the related convictions were dismissed on

21  post conviction.  Subparts (K) and (L) were discussed and denied supra.

22         Subpart (M) is a claim that appellate counsel was ineffective in failing to challenge on

23  appeal the sufficiency of the evidence to convict petitioner.  He argues he suffered denial of his

24  constitutional rights to due process because he was convicted without sufficient evidence.  In fact,

25  petitioner argues the evidence "failed to show that Mr. Mercado was at all involved in the incident at

26  Renata's" and counsel should have argue such on appeal.  This claim is without merit.

1    A question of sufficiency of the evidence to convict requires the court to view the

2 evidence in a light most favorable to the prosecution, and then determine if, in that light, an rational

3 trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

4 *Jackson v. Virginia,* 443 U.S. 307, 319 (1979).   Petitioner's present attempts to impeach the

5 credibility of various witnesses are misplaced, because the trier of fact is charged with determining

6 the credibility of the witnesses, and a reviewing court must give those determinations deference.

7 *Bruce v. Terhune,* 376 F.3d 950, 957 (9th Cir. 2004).

8    The evidence presented at trial included the testimony of Austria and of Flores as

9 discussed above, the testimony of various patrons and employees of Renata's that witnessed the

10 robbery and/or shooting and described the perpetrator in terms that matched petitioner's physical

11 attributes as well as other circumstantial evidence tending to show petitioner's involvement in the

12 robbery and shooting.  This evidence, viewed in favor of the prosecution, was sufficient, as the

13 Nevada Supreme Court found.  Exhibit 135, p. 9.

14    Subparts (N) and (O) were previously discussed and denied.

15 **III.    Certificate of Appealability**

16    In order to proceed with an appeal of this decision, petitioner must receive a

17 certificate of appealability.  28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1;  *Allen v.*

18 *Ornoski,* 435 F.3d 946, 950-951 (9th Cir. 2006); s*ee also United States v. Mikels*, 236 F.3d 550,

19 551-52 (9th Cir. 2001).  Generally, a petitioner must make "a substantial showing of the denial of a

20 constitutional right" to warrant a certificate of appealability. *Id.;* 28 U.S.C. § 2253(c)(2); *Slack v.*

21 *McDaniel*, 529 U.S. 473, 483-84 (2000).  "The petitioner must demonstrate that reasonable jurists

22 would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*

23 (*quoting Slack*, 529 U.S. at 484).  In order to meet this threshold inquiry, the petitioner has the

24 burden of demonstrating that the issues are debatable among jurists of reason; that a court could

25 resolve the issues differently; or that the questions are adequate to deserve encouragement to proceed

26 further. *Id.*

1    Pursuant to the December 1, 2009 amendment to Rule 11 of the Rules Governing

2 Section 2254 and 2255 Cases, district courts are required to rule on the certificate of appealability in

3 the order disposing of a proceeding adversely to the petitioner or movant, rather than waiting for a

4 notice of appeal and request for certificate of appealability to be filed.  Rule 11(a).  This Court has

5 considered the issues raised by petitioner, with respect to whether they satisfy the standard for

6 issuance of a certificate of appealability, and determines that none meet that standard.  The Court

7 will therefore deny petitioner a certificate of appealability.

8 **IV.     Conclusion**

9     Petitioner has not met his burden to show that the Nevada Supreme Court's decisions

10 on his various claims were contrary to or involved an unreasonable application of clearly established

11 federal law or that its factual findings were unreasonable in light of the evidence it was presented.

12 Petitioner is not entitled to relief on any of his claims from this court and the petition shall be denied.

13     **IT IS THEREFORE ORDERED** that the Second Amended Petition for Writ of

14 Habeas Corpus (docket #37) is **DENIED.**   The Clerk shall enter judgment accordingly.

15     **IT IS FURTHER ORDERED** that a Certificate of Appealability is **DENIED**.

16

17     DATED this 23rd day of April, 2010.

18                                        _Edward C. Reed_

19                                        UNITED STATES DISTRICT JUDGE

20

21

22

23

24

25

26